McKENNEY ET AL. *v.* McKENNEY ET AL.

[No. 29, September Term, 1957.]

*Decided October 23, 1957.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and PRESCOTT, JJ.

*J. Thomas Clark* for the appellants.

*Howard Wood* and *Thomas J. Keating, Jr.,* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

William McKenney, III, the son of William McKenney by his first marriage, seeks to recover from John McKenney and Maria McKenney, the son and daughter of the second marriage, his share of the furniture of his father who died in 1921, which he says belongs to him under his father's will. Demurrers to the bill were sustained without leave to amend, and the appeal followed.

The bill alleges that William McKenney died in 1921 leaving a will, which was duly admitted to probate by the Orphans' Court for Queen Anne's County, in which he named his wife and Thomas J. Keating (later Judge Keating of the Second Judicial Circuit) executors. By the will his wife received one-fourth of his estate for life, with remainder to his children living at her death, and the residuary three-fourths was given to trustees to be appointed by the Circuit Court for Queen Anne's County for the respective benefit of William McKenney, III, John McKenney and Maria McKenney, with the right in each child to receive one-fourth of the principal of his or her trust estate upon becoming twenty-one and the further right to receive an additional one-fourth at the age of thirty. At the death of any of the equitable life tenants, the trust estate remaining in the hands of the trustee was left to his or her issue free of trust. The testator directed that "The division and allotment of my estate to be

made by a commission of three male citizens of Queen Anne's County, to be appointed by the Circuit Court for Queen Anne's County, in Equity, upon the petition of any person interested in the distribution and allotment of my estate: the division to be reported to said Court for its rejection or confirmation." The bill alleges further that Margaret D. McKenney and Thomas J. Keating, the executors named, duly qualified as executors in the Orphans' Court for Queen Anne's County; that Thomas J. Keating died April 26, 1951; that the widow, Margaret D. McKenney, died September 10, 1955, and that the inventory of her estate does not include the furniture claimed; that William McKenney possessed at the time of his death certain antique furniture and oriental rugs, listed in an exhibit, of a present value of $36,000.00, which were never inventoried by his executors as part of his estate; that there was a proceeding brought in the Circuit Court for Queen Anne's County by Margaret D. McKenney, etc., et al. versus William McKenney, III, et al., for the allotment and division of the estate of William McKenney; and that said court, by its final decree of partition, did on September 26, 1924, divide and allot decedent's estate "in so far as it was placed before" the court, but that no reference to, nor division of, the furniture was made in said suit or in the division and allotment. It is alleged that although a federal estate tax was paid on the estate of William McKenney, no furniture was listed as belonging to him, and no tax was paid on the value of any furniture. Paragraph 11 of the bill recites: "That possession of said furniture was taken by said Margaret D. McKenney either in her capacity as life tenant or as co-executor from the date of the death of her husband, said William McKenney, deceased, the aforesaid testator, on June 4, 1921, until September 10, 1955, the date of her decease, and thereafter has been and still is in the possession of the said John McKenney and Maria M. McKenney, in Queen Anne's County, Maryland." The bill concludes that under the will of William McKenney, the complainant below and appellant here, William McKenney, III, is entitled to have allotted to him, absolutely, since he has reached the age of thirty, three twenty-fourths of the said furniture free of trust

and three twenty-fourths thereof to be held in trust by the trustee of his estate, as well as an additional two twenty-fourths share (being one-third of the remaining six twenty-fourths, "which should have been held by the said Margaret D. McKenney, deceased.")

The bill concludes that it will be necessary, "in order to make division and allotment under the aforesaid will of said William McKenney, deceased", for this court to assume jurisdiction and "appoint a commission of three male citizens of Queen Anne's County to make said division and allotment and to report the same" for rejection or confirmation.

Joining with their father in this suit were his two adult daughters, contingent remaindermen under their grandfather's will, and named as respondents, in addition to John Mc-Kenney and Maria M. McKenney, were John McKenney, as administrator of his mother, Margaret D. McKenney, and Thomas J. Keating, Jr., as executor of Thomas J. Keating (although Thomas J. Keating, Jr., identifies himself as administrator *c. t. a.* of Thomas J. Keating). Respondents demurred, relying on laches.

The appellants claim that laches may not be invoked since the widow and the three children were tenants in common of the furniture and the possession of one co-tenant is in contemplation of law the possession of others. We do not read the will as intending or creating a tenancy in common. The right of possession is an essential element of a tenancy in common. 14 *Am. Jur., Cotenancy,* Sec. 2; 86 *C. J. S., Tenancy in Common,* Sec. 5. William McKenney's will did not refer to the furniture specifically, and if it was his property at his death it would pass as part of the rest and residue. No right of possession to any part of the personalty in the rest and residue would vest in any beneficiary until there had been a division and allotment, as the will directed, and then there would be no joint right of possession. The furniture allotted would become the property of him or her to whom it was given by the division. In *Blessing v. House,* 3 Gill & J. 290, 307, 308, the Court said: "It is an essential attribute of a tenancy in common, that there should be a unity of possession; wherever, therefore, the tenure of the estate in-

tended to be conveyed, indicates a holding in severalty, or by particular or specific description, a tenancy in common cannot exist. * * * In this case, the 100 acres were to be laid off by executors, and the devisee was to hold them exclusively in her own possession, which provision in the will is wholly destructive of the idea of a tenancy in common, to which estate, a unity of possession is essential." See too *Potomac Lodge v. Miller,* 118 Md. 405, 410, where the will gave each of the children the right of selection of one lot of ground from those owned by the testator, and they were held not to be tenants in common.

The bill alleges that Margaret D. McKenney took possession of and retained the furniture either as life tenant or as co-executor. The recitals of the bill make it plain that she could not have taken as life tenant since her right to any portion of the estate depended upon an allotment which, as far as the furniture is concerned, was never made. As a general rule, legal title to personal property not specifically bequeathed is in the executor of a decedent and can pass to the beneficiary only through the executor or through an administrator *d. b. n. Alexander v. Stewart,* 8 Gill & J. 226; *Home for Incurables v. Bruff,* 160 Md. 156. In some instances it has been held that where there are no creditors or other legatees to complain, a record of distribution is not always essential to passage of title and that an executor who is also a legatee or trustee or guardian for a legatee will, after the time limited for the settlement of the estate, by operation of law, hold as legatee, trustee or guardian, respectively, the legacy of which possession has been taken. But the principle of transfer by operation of law has been held not applicable where there is a co-executor, since the co-executor is equally entitled to possession of the assets. *Maryland Law of Executors and Administrators, Bagby,* Sec. 41; 2 *Sykes, Maryland Practice,* Sec. 930, p. 99; *Watkins v. Wells,* 2 Gill & J. 220; *Hanson v. Worthington,* 12 Md. 418, 440; *Thomas v. Wood,* 1 Md. Ch. 296, 304. The principle of transfer by operation of law particularly would not be applicable in this case because a right to any part of the rest and residue depended upon the division and allotment which the will directs, and

which the appellants, in asking in the bill that it be provided them, recognize as necessary to their title and right of possession.

If it be assumed, as it must be on demurrer, that William McKenney died owning the furniture in question, it would seem that Mrs. McKenney could have only taken it under a claim of individual ownership or as co-executor. In either event we think that the appellants may not prevail because of laches in asserting their claims. The bill was filed thirty-five years after Mr. McKenney died and thirty-two years after the decree of the Circuit Court for Queen Anne's County in the proceeding for the division and allotment of his estate. William McKenney, III, and his two daughters concededly were parties to the partition proceedings. It appears that he was then of age, and although the ages of the daughters do not appear, necessarily they became of age at the latest in 1945; so that for a period of eleven years after obtaining their majority they took no action as possible remaindermen interested in the furniture. A number of remedies were open to the claimants here over the course of the years. If the furniture belonged to Mr. William McKenney, his executors obviously were required to inventory it and account for it in his estate. Upon their failure to do so, anyone interested in the estate could have sought the aid of the Orphans' Court to compel them to do their duty. In *Linthicum v. Polk,* 93 Md. 84, a situation not distinguishable on the facts from the instant case was before the Court. The widow was one of two executors, and it was alleged that she had omitted from the inventory certain silver and jewelry that belonged to her late husband. The Court held that under the statutes the Orphans' Court had jurisdiction on timely application to order an additional inventory of any assets omitted and that the court had further jurisdiction to determine the question of title as between the executor and the estate. See also *Fowler v. Brady,* 110 Md. 204; *Kerby v. Peters,* 172 Md. 1. *Marx v. Reinecke,* 145 Md. 311, 319, held, on the authority of *Wilson v. McCarty,* 55 Md. 277, 280, that the passage of an administration account called final does not close the estate, for " 'So long as assets can be found, which properly belong to

the estate of the decedent, which have not been brought in and accounted for, the estate is not fully closed.' " The relief afforded in *Linthicum v. Polk, supra,* was long open to the appellants. In addition to the aid that was available in the Orphans' Court, the appellants could have invoked the aid of the equity court at the time they were parties to the partition proceedings and could then have required a division and allotment of the furniture if they were entitled to it. It is nowhere alleged in the bill that the appellants were not fully aware of the existence, nature and location of the furniture, that there was any concealment of, or agreement concerning it, or that they were misled in any way. The bill offers no excuse or explanation as to why action was not taken sooner. Since the appellants could have had the question of title to the furniture determined in the partition proceedings in 1924, it may well be, although the point was not raised and we do not decide it, that *res judicata* applies. The case need not turn on this point since in the absence of any averments as to fraud, mistake, surprise, failure to know of the assets claimed, or other explanation for the long delay, we think that the law should not and will not permit this stale proceeding to avail the appellants.

There is no doubt that under proper circumstances an equity court may be invoked to bring about the recovery and redistribution of the assets of a decedent. *Berman v. Leckner,* 188 Md. 321, 327; *Safe Deposit & Trust Co. v. Coyle,* 133 Md. 343. It is equally well settled that the defense of laches may be raised in equity on demurrer where, on the face of the bill, it can be seen that it is a bar. *Rettaliata v. Sullivan,* 208 Md. 617, 621.

In *Berman v. Leckner, supra,* the defense of laches was overruled on demurrer because, although no action had been taken by claimants to the furniture of their father and grand-father for over twenty years—the allegation was that some of the children had divided it up among themselves without the aid of the Orphans' Court—the bill alleged collusion between the participants in the wrongful division to conceal the truth, and no knowledge of the fraud until the finding of a letter some two years before the filing of the suit. By analogy,

the Court applied the statute, Code, 1939, Art. 57, Sec. 14, which provided that where a party has been kept in ignorance by the fraud of the adverse party, right to suit shall be deemed to have first accrued at the time that the fraud was, or with ordinary diligence might have been, discovered. The opinion distinguished *Syester v. Brewer,* 27 Md. 288, where, after a lapse of more than twenty years, the Court refused to set aside a deed alleged to have been in fraud of creditors on the ground that although the creditors had actual notice, they took no action. In the case before us, it is agreed that even though the appellants were fully aware of the taking of the furniture by the widow and of her use of it during her life, they took no action. After the affirmance of the overruling of the demurrer in *Berman v. Leckner,* the case was tried on the merits. The chancellor found that there had been no fraud and no collusion to conceal the truth of what had occurred, and that not only were the claimants fully aware of the division of the property, but in fact it had been a bone of contention in the family for a generation. On a second appeal in *Berman v. Leckner,* 193 Md. 177, 187-188, the Court held: "The conclusion is inevitable that, inasmuch as complainants failed to prove fraud, defendants can invoke the doctrine of laches. This doctrine is based upon the ground of public policy, which requires the discouragement of stale demands. Equity considers that deliberate delay or gross negligence constitutes an implied waiver arising from a knowledge of the conditions and an acquiescence in them. * * * It is true that the doctrine of laches can be invoked only where there has been a delay which has caused prejudice to the party against whom relief is sought. * * * From the record here we find that Leonora Thomas' husband, who made the first investigation of the estate 30 years ago, is dead, and Mary Leckner has become insane. * * * Accordingly it is beyond question that defendants have been prejudiced by the long delay."

In the case at bar the two people who knew, or must well have known, most of the facts as to the furniture, that is, Margaret D. McKenney, the widow, and Judge Keating, her co-executor, are dead. *Rettaliata v. Sullivan,* 208 Md. 617,

622, *supra,* pointed out that "The cases recognize that the death of a material witness may constitute prejudice. *Weber v. Bien,* 143 Md. 561, 567; *Dorsey v. Stone,* 197 Md. 220, 223. In the instant case suit was not brought until nearly six years after the cause of action arose, and after Palmisano had died." The Court held that there was a sufficient showing of circumstances likely to prejudice the defendants to justify the application of the doctrine of laches. For cases which have found the doctrine controlling under circumstances sufficiently analogous to be helpful, see *Constable v. Camp,* 87 Md. 173; *Hadaway v. Hynson,* 89 Md. 305; *McCambridge v. Walraven,* 88 Md. 378; *Rice v. Donald,* 97 Md. 396; and *Gephart v. Taylor,* 124 Md. 111. Compare *Safe Deposit & Trust Co. v. Coyle,* 133 Md. 343, 353, *supra,* where laches was held inapplicable on demurrer because of an allegation that false statements by the widow that she did not have assets of her late husband misled the claimants. The claim there was that the husband had given certain stocks and bonds to his wife. The Court pointed out, however, that "If the evidence offered by the plaintiff does not excuse the delay, then laches may still be a sufficient defense, as we are simply determining the question on the demurrer."

The allegations of the bill in the case before us offer neither justification or excuse for the long delay, nor suggest any need for explanation by testimony. We think that laches bars appellants from relief.

*Order affirmed, with costs.*